### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| M+A MATTING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| ENTRYMATSONLINE.COM, XYZ | ) | _____ |
| CORPORATIONS 1-100, and JOHN | ) | |
| DOES 1-100, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF M+A MATTING, LLC'S COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND EMERGENCY INJUNCTIVE RELIEF

Plaintiff M+A Matting, LLC ("M+A Matting" or "Plaintiff") hereby files its Complaint for Trademark Infringement, Unfair Competition, and Emergency Injunctive Relief.

## NATURE OF THE CASE

1.    This is an action for damages and injunctive relief for trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).

2.     This action arises out of Entrymatsonline.com, XYZ Corporations 1-100, and John Does 1-100 (collectively, "Defendants") improper and unauthorized use of M+A Matting's trademark on Defendants' website as depicted below:



3.     Plaintiff's trademark is located in the top, lefthand corner of the landing page of Defendants' website and denoted by the red box above. It is also present on the same banner on each page of the website.

4.     Defendants' use infringes and is likely to cause confusion, mistake, and/or to deceive as to the affiliation, connection, and association with M+A Matting's trademarks given that the two marks are identical and Defendants' use Plaintiff's mark on their website. For example, U.S. Trademark Registration 5,904,376 covers the following logo mark:



5.      M+A Matting also enjoys the common law word mark "M+A Matting." Defendant infringes this trademark as well.

## THE PARTIES

6.      M+A Matting is a Georgia limited liability company with its principal place of business at 1729 S. Davis Rd., LaGrange, Georgia 30241. Plaintiff has spent considerable time, money, and effort building its brand as a highly successful matting company.

7.      Entrymatsonline.com is a website infringing Plaintiff's trademarks and advertising, selling, and offering for sale floor mats that are either identical or confusingly similar to Plaintiff's. Its business addresses are listed as 574 S. Tonto St., Payson, Arizona 85541 and 4552 Dovetail Estates, Socaldwell, Oklahoma 67022, however, neither address appears to be legitimate.[1]

---

[1] Entrymatsonline.com holds itself out as having two business addresses: (1) 574 S. Tonto St., Payson, Arizona 85541; and (2) 4552 Dovetail Estates, Socaldwell [sic], Oklahoma 67022. There is no Oklahoma City called "*So*caldwell." (emphasis added). Although "Caldwell" (no "So") Oklahoma is a real city, the 4552 Dovetail Estates street address does not exist in that city. The Arizona address, according to

8.    Upon information and belief, the John Doe Defendants own and/or operate entrymatsonline.com or conspire with XYZ Corporations 1-100 to do so. Upon further information and belief, the John Doe Defendants have been doing business, continue to do business, and/or will be doing business in the Northern District of Georgia, or are now conspiring with XYZ Corporations 1-100 and otherwise will be selling products in the Northern District of Georgia.

9.    Upon information and belief, XYZ Corporations 1-100 also own and/or operate entrymatsonline.com or conspire with the John Doe Defendants to do so. Upon further information and belief, XYZ Corporations 1-100 have been doing business, continue to do business, and/or will be doing business in the Northern District of Georgia, and are now conspiring with the John Doe Defendants and otherwise will be selling products in the Northern District of Georgia.

10.    Upon information and belief, Defendants' activities, products, and services are performed, rendered, and targeted at the State of Georgia.

---

the United States Postal Service website, does not appear as an identifiable address to which one may send mail.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

12.    This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are providing, advertising, distributing, promoting, offering to sell, and/or selling products and services using the Plaintiff's trademarks from this District and/or to consumers, distributors, and resellers within this District.

13.    Defendants have caused and are causing injury and damages to M+A Matting within Georgia and this judicial district by committing infringing acts within this State and this judicial district and elsewhere in the United States through their unauthorized and infringing use of M+A Matting's trademarks.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to M+A Matting's claims occurred in this district. Upon information and belief, Defendants have committed acts of infringement in this judicial district, and/or have purposely transacted business in this judicial district.

15.    Upon information and belief, Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process, due at least to

Defendants' substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Georgia residents.

16.    This case is unique in that Defendants are unknown. As a general rule, granting relief against "John Doe" defendants is disfavored in federal court. *See, e.g., Joel v. Various John Does,* 499 F. Supp. 791, 792 (E.D. Wis. 1980). Courts have made an exception to this general rule, however, where "[t]he Defendants themselves—not the Plaintiffs—have made identification impossible." *SKS Merch, LLC v. Barry,* 233 F. Supp. 2d 841, 849 (E.D. Ky. 2002).

17.    Here, Defendants have made identification impossible. Specifically, Defendants are hiding behind a hidden domain registrations. Plaintiff sent a cease-and-desist letter to Defendants' domain registrar, Gname.com, but received no response. *See* **EXHIBIT A.** Moreover, Plaintiff also sent a cease-and-desist letter to the owner of the WordPress and WooCommerce software platforms underpinning Defendants' website, Automattic. Inc., only to be told Automattic would not provide any assistance in taking down the infringing site.

18.    Further, Defendants provided fake business and mailing addresses on their website and have left Plaintiff with nothing other than two suspicious email

addresses by which to attempt to provide notice of a TRO - hhfjdwatch@gmail.com (on Defendants' "Contact Us" page), and admin@bigagnesstore.com on Defendants' "Terms and Conditions" page). Thus, this is a textbook case for using fictitious names and for the Court to exercise jurisdiction.

19.     Indeed, in similar cases of unidentifiable entities selling counterfeit products, the United States Court of Appeals for the Fifth Circuit held that a "granular focus on the 'identity' of the unnamed Defendants misinterpreted the statutory requirement [of the Lanham Act] and its application here." *World Wrestling Entm't, Inc. v. Unidentified Parties,* 770 F.3d 1143, 1145 (5th Cir. 2014) (per curiam). The Fifth Circuit reasoned that "WWE cannot know in advance the specific identities of counterfeiters who will present themselves[.]" *Id.* Nonetheless, the Fifth Circuit explained that the identity problem would be easily solved because "the persons against whom seizure would be ordered are readily identifiable as any non-affiliated person purporting to sell WWE merchandise[.]" *Id.* (internal quotation marks omitted). The Fifth Circuit thus held that "the orders sought here should issue." *Id.; see also Brockum Int'l, Inc. v. Various John Does,* 551 F. Supp. 1054, 1055 (E.D. Wis. 1982) (issuing a temporary restraining order against unknown defendants); *Joel,* 499 F. Supp. at 792 ("The problem of the defendants' identities is

met ... by the fact that copies of the summons, complaint, and restraining order itself will be served on all persons from whom ... merchandise is seized.'').

20.    Here, too, Defendants are "readily identifiable as any non-affiliated person purporting to sell" M+A products. *World, Wrestling Entertainment, Inc.*, 770 F.3d at 1145. "Based on this precedent and the unique facts presented here, the Court [should] find[] that the use of fictitious names is appropriate in this case because [Plaintiff] would have no other practical recourse for the violation of its rights." *WWE, Inc.*, 2017 WL 6948586, at *2-3.

## FACTS

21.    Plaintiff is a highly successful manufacturer of safe, clean, and comfortable mats for all types of facilities. Plaintiff provides its customers with high-performance, high-quality matting and unparalleled customer satisfaction under its

flagship branding, the trademarks "M+A Matting" and  (collectively, the "Mark").

22.    Plaintiff's predecessor entities have been in business since 1963 and 1974. The companies merged in 1999 and changed names to M+A Matting in 2018 to recognize the merger of two well-respected companies with rich histories vetting products and services. Plaintiff has been using the Mark since making the name

change official in 2018. M+A Matting will celebrate its 60th year in the flooring and

textile industry this November. True and correct copies of Plaintiff's Georgia

Secretary of State Filings attached hereto as **EXHIBIT B**.

23.     On July 2, 2018, Plaintiff filed U.S. Trademark Application No.



88/023,306 for the mark                   and ultimately received U.S. Trademark

Registration 5,904,376.

24.     The claimed goods and services of U.S. Trademark Registration

5,904,376 include: "floor mats; floor mats made of rubber and of rubber and textiles;

anti-fatigue floor mats; anti-static floor mats; electrically insulated floor mats; floor

mats with logo of others; carpet tiles; Carpeting, namely, carpet rolls for floor area

coverage; slip resistant floor mats; Floor mats, namely, welding mats; grease, oil and

chemical resistant floor mats; modular floor tiles made of carpet for floors; Floor

mats, namely, urinal mats; floor mats with messages; floor mats with graphics

supplied by customer; Floor mat components, namely, mat edging and nosing; Floor

coverings for outdoor walkways, namely, snow melting mats embedded with electric

heating elements; grooved floor mats; ribbed floor mats; Floor mats, namely,

scraper-wiper entrance mats; Floor mats, namely, switchboard mats; movement-

resistant underlayments, namely, underlays for floor mats; anchor pads in the nature of non-slip pads for use under floor mats to prevent slippage and for resisting movement of floor mats."

25.    A copy of the registration certificate for U.S. Trademark Registration 5,904,376 is attached to the Declaration of Lauren Glass ("Glass Decl."), which is attached hereto as **EXHIBIT C**, as Exhibit 3 thereto.

26.    On July 2, 2018, Plaintiff also filed U.S. Trademark Application No.



88/023,336 for the mark                    and ultimately received Trademark Registration 5,904,377.

27.    A copy of the registration certificate for U.S. Trademark Registration 5,904,377 is attached to the Glass Declaration as Exhibit 4.

28.    The claimed goods and services for U.S. Trademark Registration 5,904,377 include: "protective electrostatic discharge (ESD) grounding floor mats for safety use; Protective industrial footwear, namely, protective electrostatic discharge (ESD) grounding heel grounders; Electric ground wires and electric connectors for protective electrostatic discharge (ESD) grounding floor mats;

electrically insulated floor mats, namely, protective electrostatic discharge (ESD) grounding floor mats."

29.   Since 2018, M+A Matting has exclusively and continuously used the Mark in connection with M+A Matting's services and products, including but not limited to entrance mats, logo mats, anti-fatigue mats, and other mat-related products that are advertised, promoted, sold, and/or rendered by Plaintiff in U.S. commerce. *See* Glass Decl. at ¶ 11.

30.   The Mark has been in use, including, within United States interstate commerce, in connection with goods and services, including the above-identified products and services, since at least 2018. *Id.* at ¶ 14.

31.   M+A   Matting's   websites,   <u>mamatting.com</u>   and <u>mamattingsolutions.com</u>, promote, sell, and offer for sale M+A Matting's mats and related products to consumers, distributors, and resellers in the United States in connection with the Mark. *Id.* at ¶ 13. M+A Matting routinely sells its services through its website to consumers located in the United States.

32.   Copies   of   the   websites   for   <u>www.mamatting.com</u>   and <u>www.mattingsoluitions.com</u> are attached to the Glass Declaration as Exhibit 6.

33.     Beyond M+A Matting's websites, M+A Matting routinely attends trade shows around the United States to advertise, promote, and offer for sale its mats to consumers, distributors, and resellers using the Mark.

34.     M+A Matting is the owner of, and will rely upon, the following United States trademark registrations for the Mark: U.S. Reg. No. 5,904,376 and U.S. Reg. No. 5,904,377 (collectively, the "Registrations"). The Registrations are attached to the Glass Declaration at Exs. 3 and 4.

35.     Captured information from the USPTO's TESS, TSDR, and Assignment electronic databases show the current status and title of U.S. Registration No. 5,904,376 and are attached as **<u>EXHIBIT D</u>**.

36.     Captured information from the USPTO's TESS, TSDR, and Assignment electronic databases show the current status and title of U.S. Registration No. 5,904,377 and are attached are attached as **<u>EXHIBIT E</u>**.

37.     The Registrations are valid and subsisting and are prima facie evidence of M+A Matting's exclusive right to use the Mark in commerce in connection with the services claimed in the Registrations.

38.     The Mark is associated with M+A Matting's over fifty years of experience providing quality mats and related products and unparalleled customer service. *See* Glass Decl. at ¶ 12.

39.    M+A Matting's website, mamatting.com, promotes, sells, and offers for sale M+A Matting's mats and related products to **distributors** and **resellers** in the United States in conjunction with its Mark. Through mamattingsolutions.com, M+A Matting promotes, sells and offers for sale M+A Matting's mats and related products to **consumers** in the United States in connection with the Mark.

40.    M+A Matting's customers and the relevant purchasing public, in general, have come to know and recognize M+A Matting's Mark and associate the same with M+A Matting and/or the products promoted, offered, and sold by M+A Matting. *Id.* at ¶¶ 14-17.

41.    M+A Matting has goodwill in connection with the sale and provision of its goods and services in connection with the Mark. *Id.* at ¶ 16.

**Defendants' Unauthorized Use of M+A Matting's Mark**

42.    On or about March 17, 2023, Plaintiff became aware of the website www.entrymatsonline.com. *Id.* at ¶ 18.

43.    Upon information and belief, Entrymatsonline.com is a direct competitor to M+A Matting and purports to offer and/or sell identical and/or confusingly similar products to M+A Matting's products.

44.    For example, M+A Matting's websites indicate that they provide a plethora of different types of mats, including anti-fatigue floor mats, anti-slip floor mats, wiper mats, and others. *Id.* at ¶ 19.

45.    Upon information and belief, Defendants own and operate the website www.entrymatsonline.com which is the primary source of Defendants' sales within the U.S. and elsewhere. *Id.* at ¶ 21. A copy of Defendants' homepage is attached as to the Glass Declaration as Exhibit 7.

46.    Entrymatsonline.com has no relationship with M+A Matting and M+A has not authorized Defendants to use, market, or provide services using Plaintiff's Mark – and it never will.

47.    Despite this, entrymatsonline.com is using M+A Matting's Mark in the top lefthand corner of a banner appearing on each page of their website, purporting to sell mats and other unrelated products such as pest control, snow removal, step stools, and Cosco ladders, as evidenced below:



48.     These product offerings appear to be the same or similar anti-fatigue, anti-slip, wiper, and other mats M+A Matting also offers.

49.     Additionally, when a user hovers their cursor over Defendants' URL, a pop-up window appears which hold Entrymatsonline.com out as "M+A Matting Official store" [sic]. This also infringes M+A Matting's common law word mark. A screenshot of this window is reproduced below:



50.    Upon further information and belief, Defendants have directly and/or indirectly offered their services within the U.S. through trade shows. The "Contact Us" page shows a United States address:



51.    Defendants' improper use of Plaintiff's name and Mark is causing confusion in the marketplace and is likely to cause irreparable harm to M+A Matting. *Id.* at ¶ 36.

## Willful Infringement

52.    Upon information and belief, Defendants were aware of M+A Matting, including the Mark, before Defendants opened their business at Entrymatsonline.com

53.    Specifically, Defendants' website, www.entrymatsonline.com, uses Plaintiff's exact Mark <u>and</u> closely simulates and/or imitates M+A Matting's own websites. Moreover, when a user hovers their cursor over Defendants' URL, the pop-up window holds Entrymatsonline.com out as "M+A Matting Official store" [sic]. Thus, Defendants must have known of M+A Matting before creating their website in February 2023 – which is evidence of willful infringement. M+A Matting's websites mamatting.com and mamattingsolutions.com are depicted below:





Images of Plaintiff's websites are attached to the Glass declaration as Exhibit 6.

54.     Entrymatsonline.com website is depicted below:



Images of Defendants' website are attached to the Glass Declaration as Exhibit 7.

55. As shown above, both mamatting.com and entrymatsonline.com have banners with the Mark in the top, left-hand corner, and similar organizations or layouts. Further, both entrymatsonline.com and mamatting.com place a picture of someone walking on a mat in the center of the screen. Moreover, mamattingsolutions and entrymatsonline.com both have banners advertising sales and contained new/featured products in the center of the screen.

56. In response to seeing entrymatsonline.com, a cease-and-desist letter has been sent to Automattic, Inc., the owner of WordPress and WooCommerce platforms, and to Gname.com PTE. LTD. See Glass Decl. Exs. 8 and 9.

57. Unauthorized use, misuse, and infringement of Plaintiff's Mark devalue its brand and erode Plaintiff's exclusive rights in the Mark.

58. M+A Matting has no way to control the quality of the products Defendants offer, which may not meet the strict standards of quality to which M+A Matting holds itself.

59. M+A Matting has worked for half a century to establish itself as the pinnacle of flooring mat products, customer service, and safety.

60. Defendants, by contrast, hold themselves out as "offering a cheapest price" of products using the Mark likely has and a vague, nondescript "commitment" will have a materially adverse effect "on a whole new level." See Ex. 7. Thus,

Defendants may skimp on quality Plaintiff's business reputation and safety to achieve that end – something M+A Matting would never do. Yet, some of the products on Defendants' website appear identical to M+A Matting's.

61.     Compounding the problem, entrymatsonline.com also purports to provide an array of unrelated products under the M+A Matting Mark, including: pest control, snow removal, step stools, and Cosco ladders. Id. However, the Mark is not properly associated with anything other than M+A Matting's flagship product offering – mats. Upon information and belief, the general public cannot discern these market differences from Defendants' website.

62.     Upon information and belief, consumers, distributors, and resellers who expect the quality and customer service associated with M+A Matting's mats will be confused, disserved, and disappointed when they purchase Defendants' inferior or nonconforming products or services under the mistaken impression Defendants were in any way associated with M+A Matting. Even worse, because Defendants' website appears to be a scam site, these confused and disappointed customers will take out their ire on M+A Matting, thereby damaging its brand.

## COUNT 1: FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

63.     M+A Matting restates and incorporates by reference all previous allegations as if fully set forth herein.

64.    Defendants' actions constitute trademark infringement under 15 U.S.C. § 1114.

65.    M+A Matting's rights in the Mark are superior. Defendants have no right to use Plaintiff's Mark.

66.    Defendants' use of Plaintiff's Mark on Defendants' website is infringing and makes the websites look confusingly similar.

67.    Members of the relevant purchasing public may have been and are likely to be confused, mistaken, or deceived and/or likely to be confused, mistaken, or deceived as to the origin and sponsorship of Defendants' products and misled into believing that such goods are produced by, emanate from, or are in some way associated with M+A Matting, to the damage and detriment of M+A Matting and its reputation in violation of Trademark Act 2(d), 15 U.S.C. § 1052(d).

68.    Defendants' unauthorized use in commerce of the Mark as alleged herein has and/or is likely to deceive consumers, distributors, and resellers as to the origin, source, sponsorship, or affiliation of Defendants' products, and has and/or is likely to cause consumers, distributors, and resellers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by M+A Matting; or that Defendants are in some way affiliated with or sponsored by M+A Matting. Defendants are not.

69.    Defendants' conduct is causing immediate and irreparable harm and injury to M+A Matting's goodwill and reputation.

70.    Accordingly, Defendants' use of the Mark to market and sell Defendants' products has caused and/or is likely to cause customers to mistakenly believe that Defendants' products are sponsored by and/or affiliated with M+A Matting, constituting Lanham Act trademark infringement.

71.    Defendants' infringement is intentional, willful, and/or in reckless disregard of M+A Matting's senior user rights in the Mark.

72.    By infringing M+A Matting's Mark, Defendants have caused M+A Matting to suffer, and unless enjoined by this Court, will cause M+A Matting to continue to suffer, substantial injury, including lost profits, for which M+A Matting is entitled to damages.

73.    If Defendants' infringement is not enjoined, M+A Matting will suffer and continue to suffer irreparable harm to M+A Matting's reputation and goodwill that cannot adequately be compensated by a monetary award.

74.    M+A Matting is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 24 and 25 of the

Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT 2: FEDERAL UNFAIR COMPETITION, LANHAM ACT 43(A) (15 U.S.C . § 1125(a))

75.    M+A Matting restates and incorporates by reference all previous allegations as if fully set forth herein.

76.    Defendants' actions constitute unfair competition under 15 U.S.C. §1125(a).

77.    M+A Matting holds all right, title, and interest in its Mark, including those covered by the Registrations. *See* Glass Decl. at ¶ 9 & Exs. 3, 4 attached thereto.

78.    M+A Matting owns and enjoys common law trademark rights in its Mark.

79.    M+A Matting's rights to its Mark are superior to any rights of Defendants.

80.    M+A Matting avers Defendants are using the Mark in order to convey, imply, or indicate that Defendants' products are affiliated and/or connected with M+A Matting. They are not.

81.    Defendants operate a confusingly similar website to M+A Matting, intended to unfairly compete with M+A Matting, including by using M+A Matting's Mark.

82.    Defendants' unauthorized use of the Mark in commerce as alleged herein is likely to deceive consumers, distributors, and resellers as to the origin, source, sponsorship, or affiliation of Defendants' products, and likely to cause or consumers, distributors, and resellers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by M+A Matting, or that Defendants are in some way affiliated with or sponsored by M+A Matting.

83.    Defendants' unfair competition with M+A Matting was and is willful malicious, and/or an intentional disregard of M+A Matting's rights.

84.    As a direct and proximate result of Defendants' wrongful actions, M+A Matting has suffered, and continues to suffer, damage and loss, including to M+A Matting's goodwill and reputation.

85.    M+A Matting is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## **JURY DEMAND**

86.    M+A Matting hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **REQUEST FOR RELIEF**

WHEREFORE, M+A Matting requests that the Court find in its favor and against Defendants, and that the Court grant M+A Matting the following relief:

a.    Judgment that Defendants have infringed, and continues to infringe, M+A Matting's Mark in violation of 15 U.S.C. § 1114;

b.    An award of damages adequate to compensate M+A Matting for Defendants' infringement, but no less than the damages and/or disgorgement of profits permitted by 15 U.S.C. § 1117 and any other applicable authority;

c.    Judgment that Defendants' trademark infringement has been, and continues to be, intentional, willful, and/or reckless;

d.    Judgment that Defendants have unfairly competed, and continue to unfairly compete, against M+A Matting in violation of 15 U.S.C. § 1125;

e.    Judgment that Defendants' unfair competition has been, and continues to be, intentional, willful, and/or reckless;

f.    An award of damages adequate to compensate M+A Matting for Defendants' unfair competition, but no less than the damages and/or disgorgement of profits permitted by 15 U.S.C. § 1117 and any other applicable authority;

g.    Injunctive relief, emergency, preliminary, and permanent, pursuant to 15 U.S.C. § 1116 and/or any other applicable authority, prohibiting Defendants from continuing to violate M+A Matting's rights in any way;

h.    An award of reasonable attorneys' fees incurred herein pursuant to 15 U.S.C. § 1117 and/or any other applicable authority;

i.    An award of M+A Matting's costs and expenses;

j.    That M+A Matting be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

k.    That M+A Matting be granted such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted this 18th day of April 2023.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ L. Clint Crosby*
L. Clint Crosby
Georgia Bar No. 197877
Tyler P. Bishop
Georgia Bar No. 566705
3414 Peachtree Rd, NE, Suite 1500
Atlanta, Georgia 30326
404.577.6000 (Telephone)
404.221.6501 (Facsimile)
ccrosby@bakerdonelson.com
tbishop@bakerdonelson.com

*Counsel for Plaintiff*